## No. 21384.

EDDIE MILLER *v.* THE PEOPLE OF THE STATE OF COLORADO.
(409 P.2d 520)

Decided January 10, 1966.

GEORGE FISCHER, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, JOHN E. BUSH, Assistant, GEORGE H. SIBLEY, Special Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

PLAINTIFF in error will be referred to as the defendant. An information was filed in the district court of Boulder county in which it was alleged that on June 1, 1963, the defendant,

"* * * with the intent to defraud or deceive LONG-MONT SALE YARD, a partnership, and in purported payment to said LONGMONT SALE YARD, a partnership, for merchandise, did wilfully, unlawfully, and feloniously make, draw, utter and deliver to said LONG-MONT SALE YARD, a partnership, a certain check or draft for payment of money in the sum of Three Hundred Twenty-Four Dollars and Nineteen Cents ($324.19) drawn upon and against, and directing payment thereof by Fort Lupton State Bank, Ft. Lupton, Colorado, a national banking corporation, wherein said EDDIE MILLER did not then and there have, and wherein he had not had within ninety days prior to said June 1, 1963, an existing bank account for the payment thereof; * * *"

On September 30, 1963, the defendant filed a "Waiver of Trial by Jury." At the trial on March 6, 1964, it was shown that at the time he issued the check described in the information he did not have an account in the Fort Lupton State Bank; that he knew he had no account there; that the check was given in payment for hogs purchased at a sale conducted by the Longmont Sale Yard on June 1, 1963, and further, that he had not had an account in that bank for more than ninety days prior thereto.

The testimony offered by the defendant was that he had talked with Mr. Hartnagle, one of the partners in the Longmont Sale Yard, prior to the sale, and that Hartnagle agreed to hold his check, knowing that he had no account in the bank upon which it was drawn. The defendant further testified that he had not intended to defraud or deceive the partnership. The court found him guilty as charged in the information. Motion for a new trial was filed on March 10, 1964; it was denied on March 16, 1964; and on May 11, 1964 judgment was entered in accordance with the previous findings of the court. The defendant was sentenced to a term of not less than two and one-half years and not more than five years in the state penitentiary. He seeks to reverse the findings and judgment of the trial court on the sole ground that the prosecution failed to prove specific intent to defraud or deceive the Longmont Sale Yard.

■ The testimony of defendant concerning the agreement to hold the check, and that the partnership knew when the check was delivered that it was worthless, was denied by witnesses called by the district attorney. The trial court did not believe the defendant's testimony, and it is not within our province to set aside findings of fact which are amply supported by competent evidence.

It is further argued that the members of the partnership knew that the defendant had been convicted on a similar charge in August 1960, as a result of which he was sentenced to serve a term of two and one-half to

seven years; that while on parole he had issued another bad check to the partnership in the sum of $19.50 which was later made good by his brother; and that the brother had told the partnership not to accept any more of defendant's checks.

■■ If such evidence had any probative value as related to the question of the existence of a specific intent to defraud, it was the exclusive function of the trial court to evaluate the same. We cannot say as a matter of law that the trial court erred in finding that the guilt of the defendant was established beyond a reasonable doubt. On the subject of the kind of proof which is necessary to establish a specific intent, in *Peterson v. People,* 133 Colo. 516, 297 P.2d 529, this court said, *inter alia:*

"The gist of the crime charged is the state of mind of defendant at the time of the alleged assault. This state of mind or intent is usually manifested by circumstances and proof thereof necessarily is by circumstantial evidence, and, of course, such intent is ordinarily inferable from the facts. This is made so because the state of mind of the assailant is concealed within the mind and is not usually, and we might say never, susceptible of direct proof."

The record before us discloses no error and the judgment accordingly is affirmed.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE MCWILLIAMS concur.